3   504
105  755

## HALL v. WILLS et al.

Where one who had contracted to erect certain buildings, becomes insolvent. leaving the buildings incomplete, and an instalment of the price, payable on their completion, unpaid, nothing in the stat. of 18 March, 1844, requires that the owner, in order to entitle himself to apply the unpaid balance to their completion. should have an estimate of the work remaining to be done made by any disinterested persons. However expedient such a course may be, it is not required by the statute. Whatever has been necessarily expended in the completion of the buildings, must be deducted from the unpaid instalment. The provisions for a submission to arbitration in sec. 3, of that stat., contemplates only disputes between the contractor and those employed by him, or who have furnished them with materials.

By the stat. of 18 March, 1844, relative to mechanics and laborers employed by builders, and

the furnishers of materials, these persons, as against the owner, hold under, and not beyond, the building contract.

An account, presented by a furnisher of materials, used in the construction of a building, to the owner, in order that the latter may retain its amount out of subsequent payments, under the provisions of the stat. of 18 March, 1844, which states the quantity of the materials furnished, the dates of the delivery, the prices, and that they were delivered to the contractor to be used in the buildings, and is certified by a justice of the peace to have been sworn to before him, is sufficient under the statute.

Under the stat. of 18 March, 1844, mechanics and laborers employed by a builder, and those who have furnished him with materials, who have complied with the provisions of that stat: by presenting attested accounts to the owner, are entitled to any amount, not exceeding their claims, unpaid under the contract at the time of the notice, after subtracting the amount necessary to complete the buildings; but the owner cannot be made liable beyond the amount of his contract; nor will he be liable by reason of any payment made to the contractors in advance, where the amount so advanced would have become due before the date of the notification to the owner of the claim of the laborer or furnisher of materials.

As to the rights of the laborers and furnishers of materials inter se, they must share the fund pro rata; they do not rank in the order of time; and any such creditor for labor or materials has a right to participate in the fund until distributed.

The judgment of a court of the first instance rendered in an action instituted by the owner of a building praying for a distribution of a balance due by him to the builder among the laborers and furnishers of materials who had presented him with their accounts under the provision of the stat. of 18 March, 1844, admitting any claimant to a participation in the fund, cannot be examined on appeal, where the party dissatisfied has not appealed from the decision.

APPEAL from the First District Court of New Orleans, *McHenry, J.*

*J. E. Jones* and *Schmidt*, for the plaintiff and appellant, *Hale. H. A.* and *H. B. Bullard*, for the appellant, *Blanc: Mathewson; J.* and *H. H. Straw-bridge, Greiner, Sever*, and *Mott*, for different appellees. The judgment of the court was pronounced by

SLIDELL, J. The plaintiff had contracted with the defendant, *Wills*, for the erection of certain buildings. Before the completion of the work *Wills* became insolvent, and the plaintiff completed them himself. After the default of the builder, various persons, who had furnished materials and labor, delivered accounts to the plaintiff, availing themselves of the provisions of the act of 1844; (Acts p. 34.) The plaintiff then instituted the present action, in which he has made the contractor, and the material-men, and mechanics, parties. He acknowledged that the last instalment, which was to be paid only upon the completion of the work, was unpaid, but alleged that, in completing the work himself, he had expended a sum of $790 21, leaving a balance due of $1429 79, which he deposited in court. He prayed that the parties interested be required to litigate their respective rights in the distribution of the fund, and that he might be discharged from all further responsibility. He subsequently deposited in court the further sum of $790 21; but, under a reservation of his right to have that amount restored to him, or such portion of it is as he might prove was necessarily expended by him to complete the buildings. A judgment was rendered by the court below rejecting the claim of the plaintiff for the sum alleged to have been expended in the completion of the buildings, dismissing the claim of *Blanc*, one of the defendants, who had furnished materials, and distributing the balance of the fund, after payment of the costs, among the other creditors. The only appellants are *Hale* and *Blanc*.

1. The ground upon which the court rejected the claim of *Hale* for the amount of $790 21, alleged to have been expended in the completion of the buildings, was thus stated by the district judge: " To enable the proprietors to

withhold from the sub-contractors and the furnishers of materials any part of the money which would have been due by him to his contractor had the buildings been finished, and to apply the same to their completion, he should have had the work, which was to be done, submitted to the arbitrament of three disinterested mechanics or persons, in order that the same might have been estimated and settled in the manner that contested accounts are directed to be settled between the contractor and his sub-contractors, and furnishers of materials, as provided by the third section of the act of 1844." The district judge also remarked that: " Should any construction be put upon this law by which the proprietor could be allowed at his option to expend the money due to his undertaker without restraint, we think it would lead to fraud, and defeat the end that the legislature had in view when they enacted the statute."

While we fully appreciate the propriety of a submission of the subject of the unfinished work and its estimate to the arbitrament of disinterested persons, as a measure of expediency and precaution, we cannot assent to the opinion that the statute has required that course as a prerequisite on behalf of a proprietor, who has had the misfortune to employ an insolvent or unfaithful contractor. The provision for a submission to arbitration, contained in the third section of the act, contemplates only disputes between the contractor and his journeymen, laborers, or persons who have furnished him materials. There is nothing in the terms of the section embracing, either expressly or by implication, the case of the defaulting contractor and the proprietor who finds himself left with the building unfinished. And we may further remark that, even the submission to arbitration, provided for in the case of disputes between the contractor and his journeymen, &c., is to take place " on the agreement of both parties."

The statute of 1844, while it contemplated the protection of mechanics, laborers, and material-men, was not intended to injure or oppress the proprietors. We shall presently have occasion to show that, as against him, they hold *under*, and not beyond, the contract. The proprietor, therefore, who respects the contract, and does not violate any provision of the statute or Code, to the injury of the mechanics, &c., is to be protected. In dealing with a contractor who proves insolvent or unfaithful, he has committed no greater imprudence than the mechanic or the furnisher of materials.

In the silence of the statute upon the subject of the course to be pursued by the proprietor in case of default on the part of the contractor, we must look to the general laws, and to the suggestions of reason and equity. Now *Hale* had made a contract with *Wills* to build for him, at a certain price, to be paid by instalments as the work progressed; and the last instalment, which forms the fund in dispute, was not to be paid till the work was finished. The defendants, knowing the terms of the contract, furnished *Wills* materials, or gave him their labor. But *Wills* failed to accomplish the condition upon which the last instalment was agreed to be paid, the completion of the work. Upon his default, the right of the plaintiff, against *Wills*, and consequently against the defendants, who claim under the contract made by him, was, to complete the work. Whatever was necessarily and reasonably expended for that purpose must be deducted from the stipulated instalment; and the balance only belongs to *Wills*, or his creditors.

On the score of proof, however, the plaintiff's case is partially defective. When he deposited the sum of $790 21 in court, he offered an issue as to the fact and the reasonableness of the alleged expenditure, and placed his right to recover the deposit upon his ability to prove that he had actually and necessarily expended that amount in completing the work. He has not made out his case beyond the sum of $231 71.

II. The district judge was of opinion that, under the evidence, the claim of *Blanc* was correct, but that he had failed to deliver to *Hale* an account duly attested under the statute. The language of the statute of 1844 is that, "the journeymen, &c., may deliver to the owner of such building, an attested account *(un compte certifié)* of the amount and value of the work and labor thus performed, and remaining unpaid; and thereupon such owner hall retain out of his subsequent payments to the contractor the amount of such work and labor, for the benefit of the person so performing the same." By the fifth section the provisions of the statute are extended to persons furnishing materials.

In the account, *Wills* is stated as the debtor of *Blanc* for various items (brick and sand), the quantities, dates, and sums being stated. At the foot of the bill is the following memorandum: "These bricks and sand were delivered to *Mr. Wills* for the construction of *Mr. Thos. Hale's* houses on Magazine and Annunciation streets. New Orleans, December 6th, 1847. *Evr. Blanc*, for *J. A. Blanc*." At the foot is the certificate of *jurat* by a justice of the peace. This document was delivered to *Hale*, who filed it with his petition as one of the claims notified to him; and the correctness of the accounts is proved by a witness in the cause. The requisitions of the statute seem to us to be satisfied. The precise form of the attestation, or certificate, has not been prescribed. The document contained the details of the claim, was under oath, and exhibited to *Hale* and the contractor all needful information. We must add, that we are not prepared to say that, even if *Blanc* had given no notice before the institution of this suit, he would have lost his right to intervene before a decree of distribution, and to participate in the funds.

III. The appellants, in their answer to the appeal, have asked that, *Hale* be condemned to pay their respective claims in full. At the time when they gave their notices the only unmatured instalment was the last, and the amount of these claims largely exceed the amount unpaid. There is no such right contemplated by the statute. They are only entitled to the amount unpaid under the contract, after the due allowance of the plaintiff's necessary expenditure for the completion of the work. The language of the statute is not ambiguous—" and thereupon such owner shall retain, out of his *subsequent payments* to the contractor, the amount of such work and labor, for the benefit of the person so performing the same." sec. 1. And again, in sec. 4: "That whenever the amount due shall be adjusted and ascertained, as above provided, and if the contractor shall not, within ten days after it is so adjusted and ascertained, pay the sum due to his creditor, with the costs incurred, the owner shall pay the same out of the funds, as provided; and which amount due may be recovered from the said owner by the creditor of the said contractor, in an action for money had and received to the use of said creditor, and shall be entitled to the same privilege as the contractor to whose rights the said [creditor] shall have been subrogated, and to the extent in value of any balance due by the owner to his contractor, *under the contract with him*, at the time of the notice first given as aforesaid, or subsequently accruing to such contractor under the same, if such amount shall be less than the sum due from said contractor to his creditor."

Hence it appears that the mechanics &c., take "under the contract;" they are to have the benefit of the fund which the proprietor owes under it, and which is unpaid at the time of notice. But he is not to pay more than under the contract he stipulated to pay. Such a construction as is contended for, would be oppressive and unjust. Take, for example, a supposed case, by way of illustrating the matter in its simplest form. A. makes a contract with B., a builder,

HALE
v.
WILLS.

for a house, to cost $5000, the whole price to be paid on the completion of the work. From the subsequent rise in the value of materials and labor, or the improvidence of B., or from both those causes, B. goes in debt to his journeymen, his laborers, the sellers of lime, bricks, lumber, &c., to the amount of $7000. When the house is finished, and before A. has paid, all these creditors have notified their claims. Can it be said that A. must pay $7000, although he only promised to pay $5000. The answer is obvious. The creditors only looked to him to the extent of his contract, and for the residue have no recourse except against the contractor.

As regards the rights of the defendants, *inter se*, since they cannot all be paid in full, they must take the fund *pro rata*. The general rule of distribution among creditors is equality. The Code expressly forbids preferences, except where the law has expressly declared their existence. The statute of 1844 does not declare that the creditors who notify their accounts shall take rank in the order of time, and its omission to do so is certainly just, for they are to be considered as having all trusted to the same fund. So long as the money which has fallen due under the contract, is unpaid to the contractor or to notifying creditors, any creditor has a right to give notice, and participate in what remains unpaid.

IV. Some of the appellees have asked that certain creditors, included in the distribution by the court below, be excluded by our decree. If the appellees were dissatisfied with the judgment of the court below, admitting these parties to a participation in the funds, they should have appealed. See *Girod* v. *His Creditors*, 2 Annual, p. 546.

V. As the first five instalments had matured before any notices were served upon *Hale*, it is unnecessary to consider the bill of exceptions taken by *Hunt*. If, for example, an instalment falls due on 1st November, but is paid by anticipation to the contractor, and the creditor gives notice after the 1st November, in other words, after the maturity of the instalment has passed, it is obvious that, the anticipation cannot be considered as having injured the creditor. As we have already remarked the language of the statute is—" shall retain out of his subsequent payments."

It is, therefore, decreed that, the judgment of the court below be reversed. It is further decreed that the plaintiff receive, out of the fund deposited in court, the sum of $231 71. And it is further decreed that, the residue of said sum so deposited, be distributed among the creditors named in the schedule annexed as part of this decree, as therein set forth.* And, it is further decreed that, the costs of this appeal be paid by the defendants named in said schedule, except the said *Blanc*.