ROGERS J.
Plaihtiff instituted suit against the Perfection Curing Company, Inc., and the Southern Surety Company, its surety, for breach of a building contract. The prayer of the petition was for judgment against the contractor for $13,200 and against the surety company for $8,000-, amount of the bond. After the suit had been brought, certain furnishers of material liened the lot and building, and plaintiff then, by amended and supplemental petition, cited said lienors, the curing company, and its surety in concurso proceedings, praying that judgment be rendered for and against the several parties as their interests might appear, and rejecting any demand against itself.
Defendants curing company and shrety company filed exceptions, which were overruled, and then answered denying liability, and the curing company, further, by way of reconvention, prayed for damages in its behalf in the sum of $17,500 against plaintiff for the alleged circulation of false reports of and concerning said defendant, and for the breach of its obligations under said building contract.
The materialmen answered, alleging the sale, delivery, and use of the material as set forth in their respective claims and their lien and privilege therefor, and asked for judgment against all three of the parties, curing company, surety company, and sweet potato company, and for the enforcement of their privilege on the bond and of their lien against the lot and building.
When the case was called for trial, several other materialmen had filed interventions, ánd on the morning of the trial other claimants appeared, participated in the proceedings, and proved up their claims. The curing company. and the surety company objected to all of the evidence in the case, and to the allowance of the filing and trial of the interventions of the other claimants, which objections were overruled. After hearing, the district court rendered judgment in favor of all of the materialmen for the amounts of their respective claims, with interest thereon, against the defendants curing company and surety company, in solido, with preferential claim on the bond, but rejected their claims against the plaintiff and denied their liens on the lot and building; in- favor of plaintiff and against the contractor and surety company in solido for $2,270, with interest, less the sum of $350, “the estimated value -of additional concreting work required and done and which was done at the 'expense of the plaintiff owner,’’ and dismissing the re-conventional demand of the curing company.
From this judgment the curing company, the surety company, and the materialmen have appealed. Appellee has answered the appeal praying for an amendment of the judgment' by increasing the amount of damages in its favor to $5,000.
In this court, counsel for the curing company and. for -the surety company insist upon the meritoriousness of their /exceptions. These exceptions are: (1) Prematurity; (2) misjoinder; and (3) no right or cause of action.
It is contended that the proceeding of plaintiff is premature because, attempting to" invoke concursus proceedings under Act No. 262 of 1916, it has not brought itself within the provisions of the act, having failed to allege that it caused the contract and bond to be recorded “before the day fixed on which said work is to commence and not later than thirty days after the date of said contract.”
*921 The bond was exacted and given in conformity with Act No. 221 of 1914, and the laws amendatory thereof (Act No. 262 of 1916), and the contract is written into the bond. However, as the bond was not executed and delivered until more than 30 days after the contract was signed, it was impossible to have had it recorded within the delay set forth in the statute. Inasmuch as the surety company must be presumed to know the law, and since it executed and delivered the bond more than 30 days after the date of the contract, as appears on .the face of the bond itself, it cannot be heard to complain of the noneompliance in this respect with the terms of the statute, which by its action it had undeniably waived.
The exception of misjoinder is leveled at the alleged failure of plaintiff to bring all claimants into court. Plaintiff joined in the action three parties who had filed claims in the mortgage office of .the parish against its property. It is true plaintiff did not allege that these parties were the only ones who had filed such claims, although presumably they were, since it was to plaintiff’s interest to bring into court all claimants against its property so as to cause them to litigate their respective claims with the contractor and its surety, thereby freeing itself and its properly of their demands; nevertheless, even if plaihtiff did neglect to cite other lienors, if there were any others, we are unable to appreciate how the contractor and his surety can be prejudiced by plaintiff’s failure to provide them with additional opponents seeking to obtain substantial money judgments against them. . '
The exception of no right or cause of action is based upon the contention that since the obligation sought to be enforced is purely statutory (under section 3 of Act No. 262 of 1916), it is incumbent upon plaintiff to show by proper averments, which it has not done, that it has strictly complied with the provisions of the statute by alleging its own freedom from fault; by averring that it had caused the contract and bond to be recorded within the time and in the manner prescribed by the act; and by showing a deposit in the registry of the court of the admitted balance due on the contract.
Exceptors cite Wells v. Fidelity & Deposit Co., 146 La. 169, 83 South. 448, as reiterating the settled doctrine of our jurisprudence that the “obligation of the surety must be strictly construed,” and that therefore his obligation must be strictly and precisely alleged, which the plaintiff has failed to do. Inasmuch as plaintiff has attached to and made part of his petition the contract and bond containing all of the obligations of the contractor and of the surety, it has fully complied with the rule invoked by exceptors.
Savings & Homestead Association v. Frank, 146 La. 198, 83 South. 491, is referred to in support of the legal principle that' “the obligation of the surety is predicated upon the obligation of the owner that he will execute his part of the contract,” necessarily requiring plaintiff to allege his freedom from fault. The pleadings in the ease show that plaintiff has brought itself within the rule by alleging the performance on its part of the obligations of the contract.
Musey v. Prater, 147 La. 71, 84 South. 498, relied upon to uphold 'the contention that plaintiff must allege compliance with the requirements of the statute in order to enjoy the benefit of its provisions, has no application to the issues involved in the instant case. In the Musey Case the contest was between the owner and the material men, and not between the latter and the contractor and his bondsman. The bond was taken in the name of the owner for the faithful performance of the contract, and not for the benefit of the materialmen and laborers. The bond was not recorded within 30 days from the signing of the "contract, and none of the other things *923 required by law were done. In the instant case, on the contrary, the law was complied with in every respect, with the exception of recording the bond within the time specified by the statute, which could not be done for 'the very sufficient reason that it was not exe^ cuted and delivered until after the said delay had elapsed, thus constituting a waiver of that requirement.
U. S. Fidelity & Guaranty Co. v. D’Angelo, 150 La. 188, 90 South. 564, appears to have no bearing on the case at bar. In the cited case, the surety company sought to provoke a concursus, which the court held it had no standing to do in the absence of allegations showing that the owner had failed to comply with the provisions of the act.
It is also argued that plaintiff’s petition shows no right or cause of action because of the failure to allege therein the tender and deposit into the registry of the court of the admitted balance due under the contract, an indispensable prerequisite to the institution of the concursus proceeding.
On this point, the case of the Equitable Real Estate Co. v. National Surety Co., 133 La. 448, 63 South. 104, is cited, and a portion of its syllabus is quoted in surety company’s brief, to the effect that the owner has no right to retain from the balance due under the contract an amount due him by the contractor for demurrage, but should pay same into court, since the laborers and materialmen are entitled to be paid such balance by preference over the owner.
An examination of the opinion, however, diseloseá that this portion of the syllabus is incorrect in its statement of the facts, as the opinion sets forth that the plaintiff did not withhold, on account of its demurrage -claim, the balance due on the contract, but tendered and deposited said balance into court, setting up' its claim to payment for demurrage either “from the fund deposited in' court or by the contractors and their surety.”
In the present case, plaintiff has not made a tender and deposit .of the “balance due under the contract” for the reason that the building has nevef been completed and it will require more than the amount in plaintiff’s possession to complete it. If this be true, and we must accept the allegations of the petition as true for the purposes of the exception, plaintiff is entitled to exhaust the funds in its possession to complete the contract, and there is therefore no “balance due” the contractor under the contract, to be tendered and deposited into court.
While, unquestionably, after the completion of a building contract, any unpaid balance should be deposited in court to dwait final distribution under its judgment, there is nothing in the statute which requires this to be done, and there is certainly nothing in the statute which' forbids a resort to concursus proceedings where there may not be any balance, or where the balance may be insufficient to complete the contract. On the contrary, under the terms of the act itself, the mere fact of there being recorded claims filed against the building, after the delay stipulated in the act, authorizes the owner to cite the said claimants the contractor and the surety on his bond in concurso to have the rights of all parties adjudicated upon by the court.
The exceptions, therefore, were properly overruled by the district court.
Defendants contend, on the merits, that the present action falls within, and should be governed by, the provisions of Act No. 229 of 1916, and not by those of Act No. 262 of 1916. They base this contention upon the failure of plaintiff to record the contract and bond within the time stipulated by the latter act, arguing that Act No. 262 is special legislation to cover a certain state of facts called for in it, while Act No. 229 covers all other cases. This same contention was made in support of the exceptions filed by the de *925 fendants and has been hereinbefore disposed of adversely to the exceptors. The bond in express terms was given under the provisions of the Act No. 221 of 1914 and its amendments (Act No. 262 of }916). Since it was executed and delivered more than SO days after the.execution of the contract, the provision in the act requiring recordation within that space of time is clearly not 'applicable, and must be held to have been waived by all parties to the bond. It is argued on behalf of the surety company that no such waiver could take place as to it, as it' gave a bond called for by law and it had nothing to waive, the waiver being binding only upon the beneficiaries in the bond; the owner, contractor, and materialmen. We are unable to accept the correctness of this argument. The bond was not only in favor of the owner for the ■faithful performance of the contract, but it was also in favor of 'the materialmen and laborers for the payment of their claims. The waiver was effective against all parties to the contract. To hold otherwise would require the court to stamp the bond with illegality at the very moment of its execution; to hold that the solemn act of the. parties was meaningless and ineffective; and that the surety company in accepting remuneration for its useless undertaking under said illegal and unenforceable contract perpetrated a fraud upon its obligees therein.
The surety company further contends that it is discharged of its obligation by reason of changes made in the plans of the building and in the method of payment under the contract. This contention is not tenable. The only change in the plans of the building appears to have been a minor one in the roof, made at the request of the contractor upon the representation that it would be better for the building. It is not shown that this slight change in any manner prejudiced the rights of the surety company.
The complaint of change in method of payment is founded upon the arrangement .'entered into between the owner and the contractor whereby the first payment of $8,000, instead of being paid directly to the contractor, was left with the owner subject to the drafts of the contractor for cash to pay for materials as required. Under this arrangement, the owner paid the contractor various sums from time t.o time, and also paid some of the creditors direct. This plan appears to have been followed with regard to other installments, resulting in the owner paying over to the contractor and many of its creditors the sum. of $11,494.87.
Some attempt was made to show that the failure to make the first payment direct to the contractor ruined its credit with the First National Bank of Winnfield, with whom it was; doing business, thus bringing about its financial destruction. We do not think that the evidence introduced on this point supports this defense. The testimony of the president of the bank, which is mainly relied on in support of the defense, first taken by deposition and then as a witness on the stand in open court, when considered as a whole, does not, by any means, lead to the conclusion as contended for by the surety company. The record shows that the curing company at the time was actively engaged in constructing potato curing plants at four or five different places within the state, and it would rather appear that its financial difficulties arose from its efforts to engage in extensive building operations upon an.insufficient capital.
The surety company also urges that if it be not entirely released from its obligations, its liability to the materialmen is much less than set forth in the judgment. This argument is predicated upon the theory that the proceeding is governed by Act No. 229 of 1916,' instead of Act No. 262 of 1916. The latter, and not the former, act governs this case. The purpose of the statute is to *927 require owners to secure solvent and sufficient surety for the protection of all parties interested in the contract. The owner in this case having obtained the bond required by the statute and having complied with its other provisions, except where same were waived by the parties, is released from liability to the materialmen, who are required to look to the contractor and the surety for payment of their claims.-
It is true that plaintiff in its, petition cited only the three creditors whose /Claims were of record at the time of the filing of its petition, but the other creditors, with the exception of S. & H. Kaffie, subsequently recorded their claims and intervened in the suit, by way of answers, to assert their respective rights. The surety company complains that it was never cited by these interveners, and that it had therefore objected to the filing and the trial of the interventions, which objections were overruled. The ruling of the district court was correct. Under the provisions of the act authorizing the proceeding in concurso, the claimants were not required to cite the surety company; the only requirement is that they should appear in court, by way of answer, and assert their demands. If they were not cited originally by the plaintiff, they were not on that account deprived of their rights, and were entitled to intervene in the proceedings in the form of answers setting up their claims. Plaintiff’s purpose in instituting the proceeding was to call the contractor, its surety, and the creditors in concurso to have adjudicated the rights and claims of all parties arising out of tire building contract and bond. This was in accordance with the provisions of the statute, permitting the owner and the materialmen to obtain judgments against the contractor and its surety, in order, manifestly, to bring about the final disposition of the matters with respect to which the parties are called together.
The elpim of S. & H. Kaffie should not have been allowed, as said firm appears to have filed no pleading whatever in the proceedings. The amount allowed the People’s-Hardware Company should have been $924i-32, and not $934.32, and the amount awarded Johnson & Skinner should have been $892.06 and not $934.32, in accordance with the amounts set forth by said creditors in their claims.
On plaintiff’s claim for damages the district court allowed the sum of $2,270, less $350, “the estimated value of concreting work required and done and which was done at the expense of the plaintiff owner.” Plaintiff has answered the appeal and asked that judgment be, amended by awarding it damages in the sum of $5,000.
We are at a loss to determine how the district court arrived at the amount which it awarded as damages to plaintiff, in the absence of written reasons in the record and without any explanation on the part of counsel, either in oral argument or in brief. Our examination of the record has not disclosed, to us any justification for this allowance.
Pretermitting the question as to whether or not the surety on a building contract can be held to any further liability than the obligation, to the extent of the bond, to complete the building and pay the laborers, and materialmen thereon upon the contractor’s default, in our opinion the plaintiff has not sufficiently proved its claim for damages other than the amount it will be required to expend to complete the building. It is shown that this amount is $4,620, and since it has in its possession $4,505.13, the difference between the contract price of $16,000 and $11,494.87 paid to the contractor and certain of the creditors, its loss in this regard ■ is $114.87, which is the amount it is entitled to recover from the contractor and the surety company.
There is no merit in the Curing Company’s reconventional demand.
*929 For the reasons assigned, it is therefore ordered, adjudged, and decreed that the judgment herein appealed from he amended and modified by reducing the amounts allowed the People’s Hardware Company from $934.32 to $924.32; Johnson & Skinner from $934.32 to $892.06; and plaintiff, the Natchitoches Sweet Potato (Company, from $2,270, less $350, to $114.87. It is íñrther ordered that the claim of S. & H. Kaffie for $47.70 be rejected. It is further ordered that as herein amended and modified the judgment appealed fr.om be affirmed; plaintiff, the Natchitoches Sweet Potato Company, to pay the costs of appeal.
O’NIELL, O. J., and DAWKINS and LAND, JJ., concur in the decree, but are of the opinion that the Natchitoches Sweet Potato Company is liable in-solido to the marialmen.