**A. J. BANKHEAD doing business as Airtrol Engineering Company, Plaintiff,**

v.

**MARYLAND CASUALTY COMPANY, Irving Ward-Steinman, R. F. Zimmerman & Company, Inc., and United States of America, Defendants.**

**Civ. A. No. 2131.**

United States District Court
E. D. Louisiana,
Baton Rouge Division.

Sept. 26, 1961.

880

Watson, Blanche, Wilson, Posner & Thibaut, David W. Robinson, Baton Rouge, La., for plaintiff.

Major & Ponder, Elven E. Ponder, Baton Rouge, La., for Maryland Cas. Co., defendant.

Breazeale, Sachse, Wilson & Hebert, Paul M. Hebert, Victor A. Sachse, III, Baton Rouge, La., for R. F. Zimmerman & Co., Inc., defendant.

Gravel, Humphries, Sheffield & Fuhrer, Leonard Fuhrer, Alexandria, La., for Mary H. Yerby, defendant.

M. Hepburn Many, U. S. Atty., Prim B. Smith, Jr., Asst. U. S. Atty., New Orleans, La., for the United States, defendant.

J. SKELLY WRIGHT, District Judge.

This suit in interpleader involves the sum of $11,208.39 paid into the registry of the court by Airtrol Engineering Company, representing retained percentages on a subcontract between Airtrol and the Yerby Tin Shop. Upon default by Yerby, his surety, Maryland Casualty Company, was called upon to complete the subcontract and now claims the retained funds. The United States has assessed withholding taxes against Yerby and it likewise claims the fund. While the representative of Yerby's estate and a materialman are interpleaded, the dispute is essentially between Maryland and the United States.

On October 29, 1956, Airtrol signed a contract with the Louisiana State Authority to provide air conditioning facilities for Louisiana State University at Baton Rouge. Airtrol subcontracted the sheet metal work for the air conditioning to Yerby on December 12, 1956. Maryland executed a performance bond for Yerby's contract on November 1, 1956. Pursuant to this bond Yerby assigned all payments due or to become due under the contract to Maryland in case of default. Payment terms for the Airtrol-L. S. U. contract and the Airtrol-Yerby contract both provided for thirty-day estimates of work completed and retention of percentages until completion and acceptance of the work.

With the work 95 per cent complete, Yerby encountered financial difficulties. On January 3, 1958, Airtrol formally put Yerby in default and called upon Maryland to complete the work. On January 6, 1958, Yerby also called upon Maryland to perform. On January 8, 1958, the United States assessed withholding taxes against Yerby in the amount of $13,988.-01. A later assessment on March 3, 1958, will be disregarded since the January 8 assessment would exhaust the fund.

After Yerby's default Maryland expended $21,911.49 in completing the work and satisfying prior claims arising before Yerby's default. The job was accepted by the Louisiana State Authority on February 6, 1958. On the same day R. T. Zimmerman filed a mechanic's lien pursuant to LSA–R.S. 9:4801 and LSA–R.S. 38:2241.[1] A similar lien was filed by John T. Megison, a foreman, on March 2, 1958. Both the Zimmerman and the Megison claims arose before default. Maryland satisfied these claims and asserts the lien rights arising thereunder by subrogation.

On default the retainage on the Yerby contract amounted to $11,208.39. Being faced with several claimants to this fund, Airtrol filed this interpleader.

Although Maryland's claim rests on three grounds, its principal reliance is on the proposition that the retainage in suit never became the property of Yerby and consequently there was nothing to which the federal tax lien could attach. The United States claims that Yerby had a right to the retained percentages which was perfected on completion of the job, and, under applicable federal law, its claim is prior to all other liens or claims on the fund.

The contest between the federal tax collector and private claimants for various funds, while of relatively recent origin, has a complexity beyond its years.[2] When the fund involved is retained percentages held by an owner in the presence of a defaulting contractor and an incom-

1. LSA–R.S. 9:4801 provides for liens by materialmen and laborers on private buildings for unpaid claims on completion of the work. LSA–R.S. 38:2242 provides for sworn statements of amounts due on contracts to build public buildings which may be filed by materialmen and laborers and which require the government authority to hold retained percentages from the contractor until materialmen and laborers have been satisfied.

2. See the thorough history of this phase of lien priority law in Wolverine Insurance Company v. Phillips, D.C.N.D.Iowa, 165 F.Supp. 335.

plete building, the contest is even more recent but of comparable complexity, involving, as it does, a host of decisions interpreting priorities,[3] relation back,[4] the "no debt" theory,[5] and, more recently, the application of state property law and federal priority law.[6] From the older cases, and now from recent Supreme Court decisions, certain general principles emerge.

■ Federal tax liens are not property rights; they are claims to property which require perfecting as do other claims.[7] Being statutory liens,[8] they take preference over open accounts and inchoate and unperfected liens.[9] Likewise, assignments, without more, although prior in time to federal tax assessments, are subordinate to the tax lien because of the greater dignity of the tax lien under federal law.[10]

■■ Private claimants may assume a variety of positions. They may be simple creditors, or holders of mechanic's liens, or assignees, or sureties, or subrogees to private liens, or subrogees to private rights. For a private lienor to take preference over a federal tax lien, its lien must be perfected by prior recordation,[11] or other "perfecting" device cognizable by federal law. Its priority may not be based on a theory of relation back to the date of creation of the original debt.[12] For a private assignee to take preference over a federal tax lien, he apparently must reduce his assignment to judgment, although this is not altogether certain.[13] For a surety to assert subrogative rights to property of parties other than the taxpayer, the surety must show that the property does not belong to the taxpayer against whom the federal tax lien is asserted.[14]

■ In balancing these various claims, it must first be determined whether the taxpayer owns the property against which the federal tax lien is asserted according to state law.[15] If it is determined that the fund in question is the property of the taxpayer, then the various claims to the fund must be ranked according to federal law.[16]

3. United States v. Bess, 357 U.S. 51, 78 S.Ct. 1054, 2 L.Ed.2d 1135; United States v. White Bear Brewing Co., 350 U.S. 1010, 76 S.Ct. 646, 100 L.Ed. 871.

4. United States v. Acri, 348 U.S. 211, 75 S.Ct. 239, 99 L.Ed. 264; United States v. Security Trust & Savings Bank, 340 U. S. 47, 71 S.Ct. 111, 95 L.Ed. 53; see also Great American Indemnity Co. v. United States, D.C.W.D.La., 120 F.Supp. 445, 451.

5. Aquilino v. United States, 363 U.S. 509, 80 S.Ct. 1277, 1285, 4 L.Ed.2d 1365; United States v. Durham Lumber Co., 363 U.S. 522, 80 S.Ct. 1282, 4 L.Ed.2d 1371; Fidelity & Deposit Co. v. New York City Housing Authority, 2 Cir., 241 F.2d 142.

6. Aquilino v. United States, supra; United States v. Durham Lumber Co., supra.

7. Aquilino v. United States, supra.

8. 26 U.S.C. § 6321.

9. United States v. Security Trust & Savings Bank, supra.

10. United States v. R. F. Ball Construction Co., 355 U.S. 587, 78 S.Ct. 442, 2 L.Ed.2d 510.

11. United States v. City of New Britain, Conn., 347 U.S. 81, 74 S.Ct. 367, 98 L. Ed. 520; see 26 U.S.C. § 6323.

12. United States v. Acri, supra.

13. United States v. R. F. Ball Construction Co., supra.

14. United States v. Durham Lumber Co., supra.

15. "The threshold question in this case, as in all cases where the Federal Government asserts its tax lien, is whether and to what extent the taxpayer had 'property' or 'rights to property' to which the tax lien could attach. In answering that question, both federal and state courts must look to state law * * *." Aquilino v. United States, supra, 363 U. S. 512–513, 80 S.Ct. 1280.

16. "However, once the tax lien has attached to the taxpayer's state-created interests, we enter the province of federal law, which we have consistently held determines the priority of competing liens asserted against the taxpayer's 'property' or 'rights to property.'" Aquilino v. United States, supra, 363 U. S. 513–514, 80 S.Ct. 1280. The combined effect of R. F. Ball Construction, Dur-

In the present case, the fund involved is retained percentages withheld by the general contractor, Airtrol, from the subcontractor, Yerby, and claimed by the federal tax collector and the subcontractor's surety. The surety's principal claim, and the one upon which it must stand, is that the retained percentages are the property of Airtrol since the owner, or as in this case the general contractor, has the right, under Louisiana law, to apply retained percentages to the completion of the work. Thus, only the balance remaining after completion, if any, belongs to the subcontractor and is subject to the federal tax lien. The surety, if it completes the work, is subrogated to the owner's rights, and thus the portion of the retained percentages used in completion of the work belongs to the surety.

■ The respective rights among owners, contractors, contractors' creditors, and sureties to retained percentages when a job is incomplete have been spelled out by the Louisiana courts and legislature in rather specific terms. The statute creating the Louisiana counterpart to federal interpleader, the concursus proceeding, states in part:

"In the event that the owner has claims in concursus with the other claimants who have a privilege on his property under the provisions of this Sub-part, the cost of completing the building or other work by reason of the default of the original contractor, when established to the satisfaction of the court and when paid for by the owner, shall be reimbursed to him by preference out of any balance which might have been due under the contract if completed by the contractor; but the owner shall have no claim for the excess in the cost of completion if

such cost exceeds the amount of the said balance, or for any other of his claims against the surety on the bond of the contractor until all other claimants have been paid in full." LSA–R.S. 9:4804.

An early case in Louisiana jurisprudence gave the owner in a concursus proceeding the right to offset the amounts needed to complete the job against retained percentages required to be paid into court.[17] The setoff was ordered since "[w]hatever was necessarily and reasonably expended for that purpose [completion] must be deducted from the stipulated instalment, and the balance only belongs to Wills [contractor], or his creditors."[18] The Supreme Court of Louisiana explained that the purpose of retained percentages was "to create a temporary fund to insure all the better the payment of claims against the work, and to enable better the owner, or the surety, in the event of necessity, to complete the undertaking."[19] In a similar concursus proceeding, the plaintiff failed to pay retained percentages into court as required by statute. In excusing this the Louisiana Supreme Court said:

"In the present case, plaintiff has not made a tender and deposit of the 'balance due under the contract' for the reason that the building has never been completed and it will require more than the amount in plaintiff's possession to complete it. If this be true, and we must accept the allegations of the petition as true for the purposes of the exception, plaintiff is entitled to exhaust the funds in its possession to complete the contract, and there is therefore no 'balance due' the contractor under the contract, to be tendered and deposited into court."[20]

ham Lumber, Aquilino, and Commercial Standard Insurance Co. v. Campbell, 5 Cir., 254 F.2d 432, is to make the question of whether the right involved is a claim on property or property itself of controlling importance.

17. Hale v. Wills, 3 La.Ann. 504.

18. Hale v. Wills, supra, 506.

19. Hanson v. Liberty Const. Co., 172 La. 298, 134 So. 98, 99.

20. Natchitoches Sweet Potato Co. v. Perfection Curing Co., 153 La. 916, 96 So. 808, 811.

If only to make the position more definite, the Court later explained the Natchitoches Sweet Potato Co. case in the following succinct language:

"All that we said in that case [Natchitoches Sweet Potato Co. v. Perfection Curing Co.] was (in effect) that there was nothing due the contractor by the owner under the contract when the contractor had defaulted, and it would require more than the unpaid balance of the contract price to complete the building. In other words, there was no balance due under the contract because the contractor had not earned it by completing the contract." [21]

■■ The conclusion that Louisiana law gives the owner, and the surety, a property right in the retained percentages when the job is incomplete at the date of default is supported by the rule that the equitable lien theory does not obtain in Louisiana.[22] Neither surety nor owner had a statutory lien on the retainage and the right does not arise out of specific terms in the contract. Since Louisiana does not give owner and surety a "claim" on the retainages but does give them a right prior to all "claims," the

indication, along with the specific words of the statute and cases, is strong that this is a property right and not a claim on property.

Thus it is apparent that the law of Louisiana is quite similar to the law generally as stated in Prairie State Bank v. United States, 164 U.S. 227, 17 S.Ct. 142, 41 L.Ed. 412,[23] and the Fifth Circuit's decision in General Casualty Co. of America v. Second Nat. Bank of Houston, 5 Cir., 178 F.2d 679.[24] While Louisiana law in the present case would probably be at variance with North Carolina law as found in United States v. Durham Lumber Co., supra, Durham supports the conclusion reached here that the United States may claim only that portion of the funds which belonged to the taxpayer.

However, simply expending money after the subcontractor's default does not automatically give the surety the right to reimbursement from the retained funds. The law is clear that the retainage is to insure completion of the building and not to make a carte blanche satisfaction of every claim arising during performance of the contract by the now defaulting subcontractor.[25] That

---

21. Fidelity Homestead Ass'n v. Kennedy & Anderson, 158 La. 1059, 105 So. 64, 69.

22. In re Liquidation of Canal Bank & Trust Co., 181 La. 856, 160 So. 609, 99 A.L.R. 473; In re Hagin, E.D.La., 21 F.2d 434, affirmed sub nom. Phoenix Bldg. & Homestead Ass'n v. E. A. Carrere's Sons, 5 Cir., 33 F.2d 563, certiorari denied 281 U.S. 726, 50 S.Ct. 240, 74 L.Ed. 1143.

23. "If the United States had been compelled to complete the work, its right to forfeit the ten per cent [retained percentages] and apply the accumulations in reduction of the damage sustained remained. The right of Hitchcock to subrogation, therefore, would clearly entitle him when, as surety, he fulfilled the obligation of Sundberg & Company, to the government, to be substituted to the rights which the United States might have asserted against the fund. It would hardly be claimed that if the sureties had failed to avail themselves of the privilege of completing the work, they would not

be entitled to a credit of the ten per cent reserved in reduction of the excess of cost to the government in completing the work beyond the sum actually paid to the contractor, irrespective of the source from which the contractor had obtained the material and labor which went into the building." Prairie State Bank v. United States, supra, 164 U.S. 232–233, 17 S.Ct. 144.

24. "In these retained percentages, the contractor could give no one a right superior to that of the owner and the surety. This principle was established in Prairie State Bank of Chicago v. United States, 164 U.S. 227, 17 S.Ct. 142, 41 L.Ed. 412." General Casualty Co. v. Second Nat. Bank of Houston, supra, 178 F.2d 680.

25. Hale v. Wills, supra; LSA–R.S. 9:4804. Compare General Casualty Co. v. Second Nat. Bank of Houston, supra, 178 F.2d 680, wherein the Fifth Circuit distinguished between progress payments (money actually earned but not paid) and retained percentages (money withheld to

amount of the retained percentage which remains after completion of the sheet metal work belongs to the subcontractor.[26] While the owner may not collusively pay that money to the subcontractor in derogation of the rights of subcontractor's creditors,[27] the property right nevertheless vests in the subcontractor. Any other result would work a nullification of the hierarchy of priorities developed by federal statutory and decisional law. If "completion of the contract" amounted to satisfaction of every claim on open account against the subcontractor, these claims would take "priority" over a federal tax lien since these claims would be paid by the surety out of the retained percentages, even though the federal tax lien was perfected, choate, and prior in time. The principle of subrogation can work no such magic.

After completing the work, the balance of retained percentages, if any,[28] being the property of Yerby, is subject to the claims of his general creditors, private lienors, and the federal tax lien, according to their preference under federal law. The only private claims presently in issue are: (1) surety's claim as equitable assignee of payments due and to become due the subcontractor; and (2) surety's claim as subrogee to the claims, supported by liens, of the materialmen and laborers which have been satisfied by the surety.

The equitable assignments are, in all material respects, identical to the assignments involved in U. S. v. R. F. Ball Construction Co., supra. In that case the Supreme Court reversed the lower court which had granted preference to an assignment of retained percentages to a surety over a federal tax lien, holding that the assignments were inchoate and unperfected. Whatever may be the procedure for perfecting assignments, no action other than formal assignment occurred here and the surety's claim based on the assignments must fail here as it did in Ball.

The liens to which the surety claims subrogation are in reality statutory claims granted under Louisiana law to materialmen and laborers against retained percentages withheld by an owner which is a state agency.[29] Clearly, the nature of these statutory claims as liens or their priority are irrelevant here. The statute, by its terms, does not apply to the contractor for a governmental authority who holds retained percentages against a defaulting subcontractor. Thus, as to the retained percentages held by Airtrol, the claims of materialmen and laborers have the status of general creditors unsupported by liens. These claims lack specificity as to any particular fund and are in no wise perfected. Thus the federal tax lien is prior under the

insure completion of the job). The assignee of the progress payments prior to default had a right to those funds since they actually belonged to the contractor. The surety had a right to demand that the retained percentages be used to complete the building, as in fact they were, but the surety could claim no right to the funds advanced to satisfy claims arising before default. While only retained percentages were involved in the present case, the same principle obtains that the surety can claim property rights in only so much of the withheld funds as are needed to complete the building.

26. "Whatever was necessarily and reasonably expended for that purpose must be deducted from the stipulated instalment, and the balance only belongs to Wills, or his creditors." Hale v. Wills, supra, 3 La.Ann. 506.

27. LSA–C.C., art. 2772.

28. It is not entirely clear from the record which expenditures by the surety after default were for settlement of claims arising before Yerby's default and which were for labor and materials needed subsequent to default to complete the sheet metal work. Only the items of expenditure concerning materialmen are uncertain. The record illustrates the pay periods for which the expenditures were made. Surety may submit evidence of its disbursements needed for completion of the sheet metal work. It is assumed this may be done by affidavit and document.

29. See Note 1.

Code provisions[30] and by operation of law.[31] Hence the balance of the retained percentages must be paid to the United States.

Judgment accordingly.

James R. Edmondson, Abingdon, Va., for plaintiff.

Frank M. McCann, Asst. U. S. Atty., Roanoke, Va., for defendant.

30.  26 U.S.C. § 6321.

31.  United States v. City of New Britain, Conn., supra.