No. 3655

Second Circuit

P. P. WILLIAMS & CO. ET AL. v. ROACH

(December 31, 1929. Opinion and Decree.)

W. M. Murphy, of Tallulah, attorney for plaintiffs, appellants.

Snyder & Sevier, of Tallulah, attorneys for defendant, appellee.

ODOM, J. The defendant, Roach, contracted with the Federal Government to construct the "Cabin-Teele" levee in Tensas parish and sublet a portion of the work to Davis, and Davis, in turn, sublet to Arthur Moore. Moore, while building that portion of the levee sublet to him, became indebted to P. P. Williams & Company for goods, wares and merchandise obtained and used while the work was in progress. Government engineers in charge of the work made estimates at the end of each month showing the amount due each contractor during the current month. The amount due subcontractors was paid by the Government direct to Roach, the principal contractor, and he in turn paid the subcontractors. In order that Williams & Company might be paid the amount due them, Moore executed the following written assignment or order to Williams & Company, to-wit:

"Oct. 18, 1927.
"T. W. Roach Company,
"Memphis, Tenn.

"Dear Sirs:

"Please pay to P. P. Williams & Company my October estimate as soon as you get it.

"Very truly yours,
"Arthur Moore."

On the same day Williams & Company mailed this order to Roach with a letter in which they asked Roach to acknowledge receipt thereof. On October 24th, Roach, not having acknowledged receipt of the order, Williams & Company again wrote him calling his attention to the fact that the order had been mailed, and requested an acknowledgment of the receipt of the order. Whereupon, Roach addressed the following letter to Williams & Company:

"Octo. 26th, 1927
"P. P. Williams & Co.,
"Vicksburg, Miss.
"Gentlemen:

"This will acknowledge receipt your letter 18th inst., with order of Arthur Moore, to pay you his October estimate.

"Yours very truly,
"T. W. Roach."

There seems to have been no further communication between the parties about the claim until November 29th, when Roach wrote Williams & Company, as follows:

"November 29th, 1927
"P. P. Williams & Co.,
"Vicksburg, Miss.
"Gentlemen:
"Referring to October estimate for Arthur Moore on the Cabin Teele work. His estimate has been received as turned in for October and I understand he will have a small estimate for November.

"I certainly will look out for your interests in this matter and make settlement as soon as possible. Mr. Moore moved off his work without my permission which of course he had no right to do; he may have some accounts applying on this work for which I may be responsible; I would not feel safe in making settlement at this time, not before matters have had time to clear up.

"I believe you fully understand the position I am placed in and trust you will appreciate same.

"Your very truly,
"T. W. Roach."

In reply to the above letter, Williams & Company wrote Roach the following letter, dated December 2d, 1927:

"December 2, 1927
"Mr. T. W. Roach,
"401 North Memphis Savings Bank Bldg.,
"Memphis, Tenn.

"Dear Sir:
"We thank you for your letter of November 29th, about Mr. Arthur Moore's estimate. He was in to see us today, and stated that he had an addition in November estimate which he felt would take care of any bills for which you might be responsible, and which would leave his October estimate clear for us.

"We hope you will get his November estimate soon and as soon as you have checked up we will appreciate a check for what you may be due him.

"Our account against him amounts to $618.55, and we will appreciate it if you will take care of this before making remittances to him. We know this to be satisfactory with him, because he assigned his October estimate to cover our account, and he expected this estimate to be more than sufficient.

"Your truly,
"P. P. Williams & Co."

On December 19th, Roach wrote Williams & Company as follows:

"December 19th, 1927
"P. P. Williams & Co.,
"Vicksburg, Miss.
"Gentlemen:
"In regards to Mr. Moore; the last estimate rendered him gives him about $500.00 due him; he was of the opinion he had due him another estimate of around $600.00 or $700.00 on which the U. S. Engineers did not estimate him anything this month, so I presume Mr. Moore is somewhat mistaken in this last estimate; of course he is due some percentage of his last estimate as the engineers only estimate 80% of unfinished work; this will be a great deal less than $600.00.

"I have a gasoline and oil bill for $691.77 and your bill for $618.55 and of course a balance of $500.00 due Moore will not these bills; so I will have to wait until the work is finally finished so as to not to lose any money myself; I told Moore that I would pay these bills, but it was on the assumption he had another estimate due him that would give me enough money to pay same; I rendered Mr. Moore an estimate on the last estimate sent me by the U. S. Engineers showing station numbers, yardage and amount due him also retained percentage.

"It looked like that old work would be finished by Jany. 1st, but I am afraid this rise in the river will stop the work and flood the pits before I can get it finished; the Cabin Teele new loop or this year's contract was finished about the 15th all except sodding which I presume will be done before Jany. 1st.

"Yours very truly,      T. W. Roach."

We have quoted the above correspondence in extenso because it discloses

the issues involved in the case and has an all-important bearing upon them.

The October estimate made by the government engineers on the Cabin-Teele levee account of Arthur Moore shows a balance due him for that month of $532.98, plus a small amount retained. Moore, it seems, quit the work, and, if there was another estimate turned in for him, the record does not disclose it.

Passing now to the pleadings, this suit was filed in July, 1928, to recover of Roach the sum of $618.55, the amount of Williams & Co.'s account against Moore, Williams & Co. were joined in the suit by Moore, who sues for their use and benefit; he having transferred his claim to them. The petition sets out the facts as above stated and shown by the correspondence. In addition, it is alleged that Roach collected Moore's October estimate, and in paragraph 5 of the petition it is especially alleged that "said estimate for October, collected by said Roach amounted alone to more than enough to pay said account, which said Roach accepted said Moore's order for, in favor of petitioner, said P. P. Williams & Company, and afterwards promised to pay in full."

Roach answered the suit, denying that he owed plaintiff any sum, and denying that he accepted the assignment and agreed to pay the account. As a special defense, Roach set up that he had entered into a contract with the federal government to construct a levee, and had given bond for the faithful performance of the contract and for the payment of all labor and material furnished for the building of the levee, as required by Act of Congress of date February 24, 1905 (chapter 778, 33 Stat. 811), see U. S. Code Annotated (1928), title 40, page 92, sec. 270, and that, while the October estimate showed a small balance due Moore yet Moore was due for that month a certain account for oil and gasoline used to operate the trucks and tractors on the work, and that it was necessary for him to pay said amount under the statute and the bond which he had given, before he could settle with the government for the work done, which amount, he alleges, he did pay and charge to Moore, and that, after paying said amount, there was nothing left in his hands due Moore.

Plaintiffs' demands were rejected by the district court and they appealed.

OPINION

An itemized account filed in evidence by plaintiffs as Exhibit L shows that during the months of August, September and October, 1927, P. P. Williams & Co. sold to Arthur Moore goods and merchandise amounting to $618.55. Moore says the goods purchased were used by him in the prosecution of the levee work. But, in passing, we note that only $81.40 of this amount was advanced for the month of October, 1927, the last items on the account having been sold and shipped to Moore on October 18th, which happened to be the date on which Moore assigned to Williams & Co. his October estimate.

Moore, assuming that Roach would be due him something out of his estimate for October, that is, that Roach would be indebted to him, assigned to Williams & Co. on October 18th what is referred to as a debt due by Roach to Moore. He did not assign to Williams & Co. any specified amount of the debt or claim which he assumed Roach would owe him. The assignment is worded as follows:

"Please pay to P. P. Williams & Company my October estimate as soon as you get it."

Moore knew, and no doubt Williams knew also, that the estimate would not be made until the last of the month. Until the estimate was made, it was not possible, of course, to determine what amount would be due Moore, if anything at all, for we gather from the evidence and documents filed that it was customary for Roach to make advances to his subcontractors as the work progressed. It cannot, therefore, be said that Moore transferred or assigned to Williams & Co. a debt which Roach owed him, for, at the time of the assignment, October 18th, there was no debt certain to be assigned.

All that Moore had at the time of the assignment was a mere expectancy or contingency. That being all that he had, that was all that he could assign and all that Williams & Co. got or could get. The assignor can assign no better rights that he has, and the assignee, of course, acquires no better rights or anything more than the assignor has. Adams v. Webster, 25 La. Ann. 117; Kugler v. Taylor, 19 La. Ann. 100; Gray v. Thomas, 18 La. Ann. 412.

The effect of this assignment was to place Williams & Co. in the place and stead of Moore. Had Moore made no assignment of this claim, he would have received from Roach whatever was due him. Williams & Co., having received the assignment, has precisely the same rights, that is, to be paid whatever was due Moore by Roach. The testimony of the witnesses, taken in connection with the documents filed, shows that there was nothing due Moore from the October estimate. Document V, filed in evidence, is an estimate turned in by the engineer in charge. It shows that, after deducting former payments, expenses of engineering, and percentage retained, there was a balance due Moore of $532.98. The percentage retained by the engineer was $218.76, but it is not shown that this last amount ever went into the hands of Roach nor what became of it. But Roach was paid the item of $532.98, which would have been due Moore or his assignee, Williams & Co., if Moore had not incurred an indebtedness of $691.77, which it became necessary for Roach to pay before he could get a settlement from the government. That debt was to the Yerger Oil Company for gasoline and oil used by Moore to operate the machinery which he used in building the levee. It is admitted by counsel for plaintiff that gasoline and oil furnished and used as this was by Moore, the subcontractor, was material used in the prosecution of the work, and that the amount of the bill could have been collected out of the contractor's bond, in other words, it was a debt for which Roach was responsible.

In the case of United States, for Use of Hill, v. American Surety Co., 200 U. S. 197, 26 S. Ct. 168, 50 L. Ed. 437, it was decided and settled, we assume, that a principal contractor and the surety on his bond are liable for labor performed and advances made to a subcontractor, under Act of Congress of date February 24, 1905. The debt of $691.77 was due by Moore to the Yerger Oil Company, but could have been collected out of Roach's bond. Roach was therefore responsible for it, and could make no final settlement on his contract until it was paid. He did pay it and charged it back to Moore, so that Moore's balance of $532.98 shown by the engineer to be due on the October estimate was more than consumed, and Moore, therefore, had nothing coming to him.

Learned counsel for plaintiff in his exhaustive brief concedes that the Yerger Oil Company could have proceeded against Roach on his bond and forced payment of

its claim, and that the amount thereof collected by judicial process would have been a proper charge against Moore. But he says in effect that Roach had no right to constitute himself "judge, jury and executioner" and make the payment and charge it back to Moore; that he should have waited until forced to make the payment. The legal effect of making the payment voluntarily, under such circumstances, is the same as if it had been made under compulsion, for what one may be compelled to do through judicial process he may do voluntarily. However, in a strict sense, this was not a voluntary payment, for Roach says the claim was placed in the hands of an attorney for collection, and that suit was threatened.

The federal statute, under which this contract and bond were made, provides that suits on the bond shall be prosecuted in the federal courts and nowhere else, and counsel in brief says: "Where Congress has legislated on a subject and provided that suits arising under said legislation shall be filed in the Federal Courts and nowhere else, a state court is without jurisdiction to interpret or enforce that law," and he argues that this court has no authority to interpret or apply the provisions of the act of Congress under which the contract was made, in order to determine whether it was necessary for Roach to pay the oil bill. The answer to that argument is that we are not called upon to interpret the federal statute, because counsel has done that for us. He says in brief: "It is true that this oil and gas bill due Yerger Oil Company could have been collected out of the contractor's bond."

Roach paid the Yerger Oil Company's bill after Moore assigned his claim to Williams & Co., and counsel points out

that a debtor cannot compensate or plead set-off as against the claim against him a debt arising after notice of the assignment has reached him. Civil Code, art. 2212; Gray v. Trafton, 12 Mart. (O. S.) 702; Gillet v. Landis, 17 La. 470; E. F. Golsan & Co. v. Powell, 32 La. Ann. 521.

If the assignment made by Moore to Williams & Co. had been in fact an assignment of a debt, and if the Yerger Oil Company's claim, which, unquestionably became a debt for which Roach was liable, had arisen after the assignment, the law cited would be applicable. But, as we have already observed, this was not an assignment of a debt, because Roach was not indebted to Moore at the time the assignment was made nor did he become indebted to him later. Whether Roach would become indebted to Moore on the October estimate depended on whether the amount due for work exceeded the legitimate charges against it and the advances made. Roach, in settling with Moore, had a right to charge him with all advances made as well as the charge against the work for which he was liable, and to deduct the amounts from the estimate. See Willey v. St. Charles Hotel Co. et al., 52 La. Ann. 1581, 1590, 28 So. 182. Having made these deductions, there was nothing due on final settlement. Then, too, the Yerger Oil Company debt, while not paid until later, was in fact due prior to the date on which the estimate was turned in.

The point is urged that the account of Williams and Co., being for goods advanced to Moore, was of equal rank with that of the Yerger Oil Company, and could have been enforced against Roach's bond also. That may or may not be true; but conceding that it is true, and conceding that Williams & Co. could have proceeded

against Roach on his bond in the federal courts and forced a pro rata distribution of the amount due Moore among the creditors of equal rank, the facts are that Williams & Co. did not pursue this method, and did not at any time claim liability against Roach on his bond, but instead brought a personal action in the state courts to collect a debt alleged to be due Moore which had been assigned to them. Counsel makes a clear statement on this point in his brief when he says:

"Plaintiff in this case is not suing on a bond nor for any ranking of claims or liens nor for any construction to be put upon Roach's contract. He is suing for funds in the hands of Roach in his personal capacity, which funds have been assigned to plaintiffs, a personal debt, in which the United States has no interest for these funds passed out of its hands into the hands of Roach who owed them to Moore, who assigned them to Williams & Company."

But the Yerger Oil Company, on the other hand, did seek to hold Roach liable on his bond, and placed its claim in the hands of an attorney who threatened to file suit.

Plaintiff alleged in his petition that defendant accepted Moore's order in favor of Williams & Co. for the amount of the claim, and afterwards promised to pay it in full. There is no proof that Roach accepted the order and promised to pay the debt. The letters filed in evidence and quoted above show that he merely acknowledged receipt of the order and promised to take care of the claim if there was anything due Moore on final settlement.

The district court rejected plaintiffs' demands; that judgment is correct, and is affirmed, with costs in both courts.