HALL, Judge.
This is a suit on an open account. Following trial on the merits judgment was rendered in defendant’s favor dismissing plaintiff’s suit at his cost. Plaintiff appealed.
Plaintiff purchased a $750.00 account receivable of Houston Ready-Cut House Co. of Houston, Texas, from that company’s Trustee in Bankruptcy, paying $50.00 therefor. The account receivable represented the purchase price of 74 sets of stools and aprons alleged to have been sold and delivered to defendant by Houston Ready-Cut House Co.
Plaintiff as purchaser of the account receivable stands in the shoes of Houston Ready-Cut House Co. and his rights are no greater than the rights of Houston Ready-Cut House Co. with respect to such claim. Plaintiff bore the burden of proving the sale and delivery of the material to defendant and the Trial Judge was evidently of the opinion that plaintiff had not successfully borne that burden.
The testimony adduced by both parties is very vague and unsatisfactory. From what we can gather from the record it seems that defendant, who was engaged in the construction of a number (apparently 74) of prefabricated houses in a new subdivision in Jefferson Parish, entered into a contract with Houston Ready-Cut House Co. to furnish the pre-fabricated parts and other materials used in such construction. The actual construction of the houses was done by Liberty Builders. The exact relation of Liberty Builders to either the defendant or to Houston Ready-Cut House Co. is not clear. However, Mr. Troy E. Nash, carpenter-foreman and assistant superintendent of Liberty Builders testified that that company erected the homes under a contract with defendant.
Defendant admits that during the period' in question and up to the time Houston-Ready-Cut House Co. was placed in bankruptcy it had purchased many thousands of' dollars of materials from Houston Ready-Cut House Co. under a contract with that company, all of which were paid for, but denies that the particular items covered' by the account in question were either ordered by it or delivered to it. Defendant has raised several issues but the record is. so unsatisfactory that we shall confine ourselves to the question of delivery vel non of the particular 74 sets of stools and aprons covered by the account.
It is pertinent to state here that “stools and aprons” evidently have something to do-with window sashes although the record' does not show exactly what their function is.
On the question of delivery plaintiff adduced the testimony of Mr. Troy E. Nash, assistant superintendent of Liberty Builders. Mr. Nash testified that Liberty Builders-had a contract with defendant for the erection of pre-fabricated homes furnished by Houston Ready-Cut House Co.; that after Liberty Builders had completed 39 homes the Federal Housing Authority and the-Veterans Administration compelled defendant to install window stools and aprons in-these homes; that he distinctly remembered' the delivery by Houston Ready-Cut House-Co. to the building site of a truck load of window stools and aprons sometime in July *704 (1963); that he did not recall the exact date of delivery; that he helped unload the truck and that he and one Dupepe, an employee of Liberty Builders, counted the sets, found there were 74 sets, and that Dupepe, who was in charge of checking all materials, signed a receipt or dray ticket therefor; that he later saw the stools and aprons installed in the 39 houses. Mr. Nash also testified that there is an average of 8 stools and aprons to each house.
Plaintiff also introduced answers to interrogatories propounded to Mr. J. C. Sut-iles, President of Houston Ready-Cut House Co. In answer to the following interrogatories Mr. Suttles gave the following answers without further explanation:
“Q. As President of Houston Ready-Cut House Company, are you familiar with the accounts of said company ?
“A. Yes.”
“Q. Did Houston Ready-Cut House Company sell and deliver to West-wood Homes, Inc. in Kenner, Louisiana, seventy-four (74) sets of stools and aprons ?”
“A. Yes.”
“Q. Did Houston Ready-Cut House Company send a statement for $740.00 for the above mentioned stools and aprons to Westwood Homes, Inc.?”
“A. Yes.”
“Q. Did Westwood Homes, Inc. pay to Houston Ready-Cut House Company the amount above mentioned for said stools and aprons?”
“A. No.”
Plaintiff attached to his petition a copy of an invoice dated July 19, 1963 from Hous-tton Ready-Cut House Co. addressed to defendant, reading as follows:
“74 Sets. Stool and apron shipped July 15 — To correspond with like number of sets of Finish Materials delivered to date. $10.00 set $740.00.
“As per copy of delivery sheet shozving Lot and Block numbers herewith attached — original signed by Mr. C. J. Dupepe.
“Billed authority of Mr. Burt Brown’s letter of June 21th. Copy attached.” (Emphasis supplied.)
Attached to this invoice is a typewritten list of 74 lots with their block numbers headed “Stool and apron shipped 7/15 (74 house),” and also attached is a photostatic copy of a handwritten receipt signed by C. J. Dupepe showing similar lot and block numbers headed “Stool and apron for 1st 74 Homes.” This receipt is dated 7Jll/63. Also attached is an unsigned photo copy of Mr. Burt Brown’s letter referred to in the invoice.
The record contains no explanation of the fact that Mr. Dupepe’s receipt is dated July 11, 1963, whereas the material was not shipped from Houston until July 15, 1963.
If, as Mr. Nash testified each house required an average of 8 sets of stools and aprons, the 39 houses Mr. Nash referred to would require 312 sets, and 74 houses would require 592 sets.
It is obvious that Houston Ready-Cut House Co. furnished to defendant many more sets of stools and aprons than the 74 sets shipped on July 15, 1963, and it is obvious to us that the receipt signed by Mr. C. J. Dupepe covered 74 sets which had been delivered on July 11, 1963 and did not cover the shipment of July 15, 1963, the delivery of which is in question here.
The language of the invoice bears this out. It refers to the fact that the stools and aprons shipped July 15 were "to correspond with like number of sets of Finish materials delivered to date,” and the Du-pepe receipt attached thereto obviously was intended merely to show the lot and block numbers of the 74 houses under construction by defendant.
While Mr. Nash testified that he had helped unload 74 sets of stools and aprons *705 sometime in July and that Mr. Dupepe had signed a receipt therefor, he did not remember the date they were received. He might well have been referring to the 74 sets receipted for by Mr. Dupepe on July 11. Mr. Dupepe was not called as a witness and his absence is not explained of record. However, plaintiffs counsel assures us that he made every effort to locate Mr. Dupepe but was unsuccessful.
It might be well to mention here that many accounts of Houston Ready-Cut House Co. against defendant had been assigned to a Houston bank. These accounts were all paid and/or compromised by defendant. The single account involved here was not included in those assigned to the bank and consequently fell into the bankrupt estate of Houston Ready-Cut House Co.
We conclude from the record as a whole that plaintiff has failed to sustain the burden of proving delivery of the particular materials covered by the account sued upon.
For the foregoing reasons the judgment appealed from is affirmed; costs of this appeal to be borne by plaintiff-appellant.
Affirmed.