REGAN, Judge.
The plaintiff, Fidelity National Bank of Baton Rouge, instituted this suit against the defendant, Jack Neilson, Inc., endeavoring to recover the sum of $40,844.00, representing various amounts which it asserts is owed to it by the defendant on accounts receivable assigned to it by Coastal Marine Transport, Inc., in accordance with the requirements of the Louisiana Assignment of Accounts Receivable Act.[1]
The defendant answered and denied any indebtedness to the plaintiff or to Coastal Marine Transport, Inc,, which assertion was predicated upon the fact that at the time the defendant was informed of the assignment by the plaintiff, Coastal Marine Transport, Inc. was indebted to the defendant for sums in excess of the amount sued for herein, thus extinguishing by compensation the defendant’s obligations.
Following a trial on the merits, judgment was rendered in favor of the defendant dismissing the plaintiff’s suit. From that judgment, the plaintiff has prosecuted this appeal.
The record discloses that on April 7, 1964, the defendant, Jack Neilson, Inc., entered into a Bareboat Charter with Coastal Marine Transport, Inc., whereby it chartered the M/V MARTHA JANE to Coastal for a charter hire at the rate of $1,000.-00 per month for the first three months and $1,500.00 per month for the remaining thirty-three months of the period covered by the charter. Inasmuch as Jack Neilson, Inc., and Coastal performed services for each other during the charter period, there ensued a practice of offsetting towing invoices submitted by Coastal against the charter hire owed by it. On January 3, 1966, the M/V MARTHA JANE was voluntarily returned by Coastal to Jack Neilson, Inc., with Coastal having paid only $7,500.00 on its obligation to Jack Neilson, Inc.[2]
By virtue of a letter dated February 15, 1966, the plaintiff bank advised Jack Neil-son, Inc, for the first time that it was the assignee of the accounts receivable of Coastal and requested that all payment of *414 the invoices of Coastal be made to the bank for Coastal’s account.
The defendant immediately advised the plaintiff by letter dated February 23, 1966, that all invoices from Coastal had been offset against sums due by it for charter hire.
For the sake of clarity at this point in our opinion, it should be noted that on March 4, 1964, Lincoln Boat Corporation entered into a similar Bareboat Charter Party wherein it chartered the M/V SEABROOK to Jackson Marine Company, Inc., with Coastal Marine Transport, Inc. making itself a party thereto, apparently in the capacity of guarantor. The period of this charter was also for thirty-six months for a hire of $1,250.00 per month.[3]
The M/V SEABROOK was voluntarily returned by Coastal on December 1, 1965 leaving a balance due on the charter agreement of $37,500.00. This amount was reduced to judgment by Lincoln Boat Corporation in the United States District Court for the Eastern District of Louisiana on August 14, 1967, and this judgment was subsequently assigned by Lincoln to the defendant corporation on December 3, 1969. By virtue of this assignment, the defendant partially relies on this judgment to establish its defense of extinguishment by compensation of the debt sued upon.
The record also discloses that on or about August 27, 1964, a few months after the charter of the M/V MARTHA JANE, Coastal began assigning accounts receivable to the plaintiff bank as security for loans. The bank duly filed a statement of assignment of accounts receivable pursuant to R.S. 9:3104 and effected the reinscription of this statement every two years in conformity with the requirements of R.S. 9:-3106. However, it was not until February 15, 1966, when the bank attempted to notify the defendant of these assignments.
On July; 2, 1965, the defendant acknowledged an accountant’s confirmation that invoices in the amount of $40,844.00 had been submitted to it by Coastal. Moreover, the testimony of Jack Neilson, the sole owner of the defendant corporation, leaves little doubt that this amount is actually due. Consequently, the only serious question posed for our consideration is whether the defendant succeeded in proving its defense of the extinguishment by compensation of the obligations represented by the invoices assigned by Coastal to the plaintiff.
The plaintiff argues that the lower court erred when it permitted the introduction of the judgment against Coastal in favor of Lincoln Boat Corporation dated August 14, 1967, and its assignment on December 3, 1969, to the defendant. It argues that both of these documents were consummated long after the notice by the bank to the defendant of Coastal’s assignment of its account receivable in accordance with R.S. 9:3107.[4]
*415 We are convinced that the judgment obtained by Lincoln and assigned to the defendant cannot be used by it to extinguish by compensation the accounts receivable now owned by the plaintiff bank.[5] The Assignment of Accounts Receivable Act does not purport to be the exclusive method of effecting such assignments. R. S. 9:3108 specifically provides that the Act shall not be construed as repealing the provisions of the Civil Code with respect to assignment of accounts receivable. However, this' section of the Act clearly provides that it is the exclusive method for the assignment of accounts receivable during the effective period of a statement of assignment duly recorded in accordance with R.S. 9:3103, as the bank has done in this case. Therefore, because of the existence and reinscription of the statement of assignment, our reasoning must be predicated solely upon the provisions of this act.
The very title of the act sets forth the somewhat contradictory purpose for which it was enacted. The title provides that it is “An Act to provide for the assignment of accounts receivable without necessity of notice to the debtors of accounts assigned.” [6] It is the general commercial practice, as reflected by the testimony of an employee of the plaintiff bank in this case, that it is often undesirable to notify an account debtor of the assignment of his account to a bank or other lending institution as security for a loan to the account creditor, since such an assignment often implies or is construed as financial weakness on the part of the account creditor. Consequently, the statute was enacted as a compromise to permit the assignee of accounts receivable to have its security interest in those accounts protected against everyone but the account debtor by the mere filing in the public records of a statement of assignment of accounts.
The following italicized portion of R.S. 9:3102 clearly reveals that it was the intention of the legislature to have the recording of such a statement of assignment serve as constructive public notice of the security interest acquired by the assignee of accounts receivable:
“Every assignment of an account receivable evidenced in writing and made for a valuable consideration within the effective period of a statement of assignment made and filed for record as hereinafter prescribed shall be valid and shall be deemed and held to have been fully perfected at the time such assignment is made, notwithstanding that the debtor be not notified of or does not assent to such assignment; and thereafter no subsequent assignee, pledgee, purchaser or transferee of such account or other person claiming or to claim under, through or against the assignor, and no existing or future attaching, garnishing, judgment, execution, levying or other creditor of the assignor, except a creditor who through judicial proceedings shall have perfected a superior lien on such account prior to the time of such assignment, shall or can have or be entitled to any right, title, lien or interest in or to such account superior to or in diminution of that of such assignee therein or thereto. Acts 1952, No. 293, § 2.” (Emphasis added.)
The provisions of R.S. 9:3107, however, when considered in the context of the title of the act, reveal that the filing of the statement of assignment does not constitute public notice effective against the account debtor since he must be given written notice of the assignment of the particular account of which he is the debtor. This section of the statute provides that if the account debtor in good faith makes payment of such an account to the assignor or to a subsequent owner of the account other than the original assignee pursuant to no *416 tice thereby, the original assignee has no recourse against him.[7]
Thus, since Lincoln Boat Corporation did not obtain its judgment until August 14, 1967, long after the filing of the statement of assignment of accounts receivable by the bank, this judgment was inferior to and was primed by such assignment.[8] When the judgment was sold or assigned by Lincoln to the defendant, the defendant acquired no greater rights than those possessed by Lincoln at the time of the assignment.[9] Therefore, the judgment did not perfect a lien superior to that of the bank on the accounts receivable in favor of the Lincoln Boat Corporation, and the assignment of this judgment to the defendant gave it no greater right than Lincoln possessed to use said judgment in diminution of the rights of the plaintiff bank.
There is no dispute with respect to the fact that Jack Neilson, Inc. did not receive notice of the assignment of accounts receivable by Coastal until February IS, 1966, subsequent to both the confection of the Bareboat Charter agreement and the voluntary surrender and non-payment of the charter hire by Coastal. Therefore, under the provisions of R.S. 9:3107, the rights of the plaintiff bank against the defendant are subject to the dealings between the defendant and Coastal prior to the receipt of written notice by the defendant from the bank of the assignment of the accounts receivable, nothwithstanding the fact that a statement of accounts receivable had been filed in the public records.
In order to establish the existence of Coastal’s obligation, which the defendant contends preexisted the bank’s notice, the defendant introduced into evidence an unsigned and uncertified copy of the Bareboat Charter Party mentioned above, dated April 7, 1964, wherein the defendant chartered to Coastal Marine Transport, Inc., the M/V MARTHA JANE. The document was introduced over two objections by counsel for the plaintiff and the trial judge offered as a reason for his overruling this objection the fact that he did not wish to decide the case on “simple technicalities.”
The basis of the plaintiff’s objection was the best evidence rule, which, simply stated, provides that the best evidence that is obtainable under the circumstances of the case must be used to prove any disputed fact. When an original document is not available, a copy may be used, but only after proof has been adduced that a diligent effort was made to obtain the original and that it was unavailable or where proof is adduced that an effort to search for the original would amount to a vain and useless gesture. This rule was recognized and followed by the Louisiana Supreme Court in the case of Mercier v. Harnan[10] wherein the organ for the court stated that the best evidence rule was “ * * * an elementary principle * * * found in every work on evidence, and so completely consecrated by established jurisprudence as to dispense with any citation of authorities to support it.” As correctly argued by counsel for the plaintiff, enforcement of the best evidence rule serves the dual purpose of providing the most satisfactory evidence which is available and of preventing the frauds which would frequently attend the proof of the contents of writings by oral testimony.[11]
*417 It is certainly not our intention to imply an attempted fraud on the part of the defendant. However, the best evidence rule is such a basic foundation of our judicial system that to ignore it as a “simple technicality” would be a desecration of continued judicial efforts to arrive at that elusive concept commonly referred to as a search for the “truth.” In support of the defendant’s position, we must recognize that the record is pregnant with evidence implying the existence of the Bareboat Charter of the M/V MARTHA JANE. For example, the trial court recognized that while the documentary evidence was not sufficient, the testimony of the president of the defendant corporation was uncontradicted with respect to the existence of the charter and he further pointed out that it would be quite strange if Coastal had furnished the services and materials reflected in the invoices assigned to the bank for a period in excess of one year without any effort on its part to obtain payment thereon if there were, in fact, no agreement between Coastal and the defendant to offset the invoices against the outstanding charter hire.
Since the effect of the judgment of this court would be to deny the defendant a substantial monetary right on the basis of a technical rule of evidence in the face of surrounding circumstances clearly indicating, but not proving, the existence of the document relied upon in support of the defense of compensation, justice dictates that this case be remanded to the lower court in order to afford the defendant an opportunity to prove his defense in accordance with the best evidence rule, if in fact such evidence does exist. Since there is some ambiguity with respect to the exact amount which would be due by Coastal to the defendant under the purported Bareboat Charter of the M/V MARTHA JANE, this case is also remanded for the purpose of producing evidence of the amount due under the Bareboat Charter and to substantiate the fact that this amount is liquidated and demandable.
For the foregoing reasons the judgment of the lower court is annulled and set aside, and the matter is hereby remanded to the lower court for additional proceedings in conformity with the rationale set forth hereinabove.
.The costs of this appeal are to be paid by the defendant, and all other costs of this suit are to await the final determination hereof.
Judgment annulled and set aside; remanded.

. R.S. 9:3101 et seq.

. The adequacy of the proof of the existence of this charter and of its provisions is in serious dispute as this opinion will subsequently point out.

. Lincoln Boat Corporation is wholly owned by Jack Neilson. However, since there has been no attempt by either party to “pierce the corporate veil” it must be treated by us as a completely distinct and separate legal entity.

. This statute provides:
“The rights of an assignee against the account debtor shall be subject to any dealing by such debtor with the assignor or any other assignee or other successor in interest of the assignor until the account debtor receives notice in writing of the assignment of the particular account of which he is debtor from or on behalf of the assignee or the assignor, and in any case in which the debtor of an account receivable not being notified of the assignment of the account made in compliance with the provisions of this Part and acting in good faith makes payment of such account in whole or in part to the assignor, or to a subsequent purchaser or transferee of such account who shall have notified the debtor of such purchase or transfer to such subsequent purchaser or transferee, then the debtor shall to the extent of such payment be exonerated of liability to make payment to the first as-signee of the account, but the person to whom such payment is made shall be accountable and liable to the assignee for such sums received by him. Acts 1952, No. 293, § 7.”

. Our reason for this conclusion, however, is not in accordance with that advanced by the plaintiff bank.

. Act No. 293 of 1952.

. However, the original assignee does have recourse against the subsequent assignee to the extent of the payment by the account debtor since the statement of assignment, pursuant to R.S. 9:3102, serves as public notice to the subsequent as-signee of the security right acquired by the original assignee.

. R.S. 9:3102, supra.

. See Harris v. Westwood Homes, Inc., 191 So.2d 702 (La.App.1966) ; P. P. Williams & Co. v. Roach, 12 La.App. 305, 125 So. 465 (1929).

. 39 La.Ann. 94, 1 So. 410 (1897).

. See: 1 Jones on Evidence, § 231 (5th Ed.1958).