557 F.2d 482
 UNITED STATES FIDELITY & GUARANTY COMPANY, Plaintiff-Appellant,
v.
HOUSING AUTHORITY OF THE TOWN OF BERWICK, Defendant,
Hibernia National Bank of New Orleans, Intervenor,
Martin-Lebreton Insurance Agency, Intervenor-Appellee.
 No. 75-3848.
 United States Court of Appeals,
Fifth Circuit.
 Aug. 12, 1977.
 
 A. Morgan Brian, Jr., New Orleans, La., for plaintiff-appellant.
 Russell M. Cornelius, New Orleans, La., for defendant.
 Appeal from the United States District Court for the Eastern District of Louisiana.
 Before WISDOM and GEE, Circuit Judges, and BOOTLE,* District judge.
 WISDOM, Circuit Judge:
 
 
 1
 This appeal concerns a dispute over the retained contract funds of two companion public construction projects. The parties are the surety (plaintiff-appellant) on the prime contractor's statutory performance and payment bonds on both projects, and the contractor's insurance agency as a conventional assignee of a portion of the contractor's rights to the retained funds on only one of the projects. We hold for the surety, and reverse the district court.
 
 I.
 
 2
 The Housing Authority for the Town of Berwick, Louisiana, (Authority) initiated two construction projects for low-rent housing developments on companion sites in St. Mary Parish, referred to here as Job-2 and Job-3. The prime contractor on each, Delta General Construction Corporation (Delta), furnished to the Authority statutory performance and payment bonds to cover both prime contracts on which United States Fidelity and Guaranty Company is surety.[1] Delta executed in favor of USF&G one general indemnity agreement and a separate application for each of the two bonds.
 
 
 3
 The pertinent provisions of the bond applications state:
 
 
 4
 As collateral, to secure the obligations herein of the undersigned and all other indebtedness liabilities of (Delta) to (USF&G), whether heretofore or hereafter incurred. . . . (Delta) . . . assigns . . . all . . . interest of (Delta) in and to . . . every contract covered by (USF&G's) bond . . . including all retained percentages, deferred payments, earned moneys and all funds and properties whatever that may be due or become due under said contract . . . growing out of said contract or work done thereunder.
 
 
 5
 . . . such assignment (is) to be effective as of the date of said contract but only in event of . . . any breach of any of the agreements herein contained, or of said contract or bond, or of any other bond (heretofore or hereafter) executed or procured by (USF&G) on behalf of (Delta). (Emphasis added.)
 
 
 6
 Subsequently, Martin Lebreton Insurance Agency (Agency)[2] to enable Delta to pay the past due balance owed on its premium account endorsed Delta's promissory note to Hibernia National Bank in New Orleans for $23,856. The following day the note held by Hibernia was collaterally secured by Delta's written assignment to the Agency of a $23,856 interest in the retainage outstanding on Job-2. The Authority was notified of this assignment before they were notified of the previous assignment to USF&G.
 
 
 7
 Delta became unable to pay its subcontractors and suppliers on a current basis and these third parties threatened to assert their claims. USF&G advanced its own funds to pay the claims of those third parties. With the help of money advanced by USF&G in accordance with its bond obligations Delta ultimately completed both jobs. The totals of the respective 10 percent retainages withheld by the Authority under the two contracts were closed out at $56,986 for Job-2 and $85,000 for Job-3. The main action in this case between USF&G and the Authority has been settled and dismissed. The only remaining matter is the determination of the Agency's claim to certain contract funds now in the possession of USF&G from Job-2.
 
 
 8
 The trial judge held in his final judgment that USF&G's right to the retainage on each job, based on subrogation and bond application assignment, was superior per se to the loan-collateral assignment rights of the Agency, but only up to the respective separate amounts of bond loss USF&G sustained on each particular job. USF&G's total bond losses were $49,798 on Job-2 and $294,539 on Job-3. When USF&G is credited with the respective remaining contract balances that were paid to it the results are a net retainage balance of $7,188 left over on Job-2 but a net excess loss of $209,539 on Job-3. The trial judge did not, however, allow USF&G to offset the small net retainage left on Job-2 against the large net bond loss on Job-3 to reduce the surety's deficit as far as possible by utilizing all the available contract funds. Rather the Agency's assignment was held to be the superior right for recovery of the $7,188 net balance of retainage from Job-2, while USF&G's net loss of $209,539 on Job 3 was denied the chance to be further reduced by that $7,188.
 
 II.
 
 9
 The only question raised on appeal is whether the surety, USF&G, was properly denied recoupment of its net excess loss on the highest-loss job, Job-3, from the net excess retainage of $7,188 on the lower-loss job, Job-2. Although USF& G seeks reversal on subrogation and assignment theories, in light of our disposition, it is necessary to discuss only the subrogation claim.
 
 
 10
 The court below recognized that USF&G as surety for Delta was subrogated to the rights of laborers, materialmen, and suppliers of Delta whose claims USF&G paid, and that the rights of those original Delta creditors are superior to those of the Agency. Pearlman v. Reliance Insurance Co., 1962,371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190; Claiborne Parish School Board v. Fidelity & Deposit Co. of Maryland, 5 Cir. 1930, 40 F.2d 577; Bankhead v. Maryland Casualty Co., 197 F.Supp. 879 (E.D.La.1961); 17 Am.Jur.2d "Contractor's Bond" §§ 107-8 (1964). It is also true, however, that USF&G is subrogated to the priority statutory position of the public owner with respect to the contract fund. Prairie State Bank v. United States, 1896, 164 U.S. 227, 17 S.Ct. 142, 41 L.Ed. 412; Henningsen v. U. S. Fidelity and Guaranty Co., 1908, 208 U.S. 404, 28 S.Ct. 389, 52 L.Ed. 547; cf. Bankhead v. Maryland Casualty Co., 197 F.Supp. 879 (E.D.La.1961). It is clear, then, as the district court ruled, that USF&G had priority vis-a-vis the Agency, to the retained contract funds of Job-2 for its losses associated with that job. The question here is whether the retainage on Job-2 can be applied to USF&G's losses on Job-3.
 
 
 11
 The contract between the Authority and Delta entitled the Authority to backcharge Delta's potential retainage on Job-2 with all payments required to be made for settling third-party labor and material claims on both Job-2 and Job-3. As a result no "final payment of retainage" ever matured or became due Delta under the prime contract for Job-2.
 
 
 12
 Article 12 of the contract between the Authority and Delta concerning "Payments" provides:
 
 
 13
 . . . (T)here shall be retained 10% . . . until final completion and acceptance of all such work covered by the Contract . . . Upon completion and acceptance by the . . . Authority of all work required hereunder, the amount due the Contractor (Delta) shall be paid after the Contractor has furnished to the . . . Authority a release . . . of all claims against the . . . Authority arising and by virtue of this Contract . . . The . . . Authority may withhold any payment otherwise due the Contractor . . . to protect the . . . Authority against any claim (emphasis added).
 
 
 14
 The required "release" before final payment was due was not given until March 4, 1975 when close-out documentation on Job-2 was finally completed, executed by Delta, and forwarded to the Authority. On April 30, 1975 the final release documents were signed by the Authority.
 
 
 15
 By April 30, 1975, close to seven years after Delta's assignment to the Agency, the massive loss on Job-3 had occurred and the liabilities therefor were fixed. More than the entire balance of Job-3 contract funds, both progress money and final retainage, was necessary to satisfy claims of third parties for those completion costs as well as Delta's unpaid labor and material bills. Had USF&G not paid those sums under its bond, the Authority had an express contract right and statutory responsibility[3] to use all of Delta's otherwise available contract funds, whether derived from Job-2 or Job-3 to pay them. Consequently, there never was a debt owed by the Authority to Delta and, therefore, the assignment by Delta to the Agency does not preclude recovery by USF&G of the net excess retainage of $7,188 from Job 2. As stated in P. P. Williams & Co. v. Roach, 12 La.App. 305, 125 So. 465, 468 (1929), " . . . (an) assignor can assign no better rights than he has, and the assignee, of course, acquires no better rights than the assignor has."
 
 
 16
 The net result is that the Agency acquired nothing, because no debt from the Authority to Delta resulted, and USF&G, subrogated to the Authority's rights, was entitled under the terms of the contract between the Authority and Delta to use Job-2 retainage to pay Job-3 claims.
 
 
 17
 A case analogous in principle, P. P. Williams & Co. v. Roach, supports our conclusion. In Williams, the assignee of a subcontractor sued the contractor to recover the October progress payment due the subcontractor. The October payment, however, was backcharged to the subcontractor for debts it had incurred for which the contractor was liable. As a result, since the amount due for the work did not exceed the legitimate charges against it, the October payment never became a debt owed by the contractor to the subcontractor, and the sub-contractor's assignee could not successfully claim a debt that never existed. Here also, the Agency cannot successfully claim retainage due Delta when the amount of retainage was insufficient to meet the legitimate charges against it.
 
 
 18
 As one final point, we note Agency's misplaced reliance on Baker v. City of Shreveport, 165 La. 391, 115 So. 631 (1928) reh. denied. In Baker there is no suggestion that the contract between the public body and the contractor allowed excess retainage from one job to be used to pay claims on another job. Baker, therefore, does not control our determination.[4]
 
 
 19
 Although other avenues of approach might lead to the result reached in this case, we follow the course outlined in this opinion.
 
 
 20
 REVERSED.
 
 
 
 *
 Senior District Judge of the Middle District of Georgia sitting by designation
 
 
 [1]
 As these are public works, the projects and the prime contracts are governed by Louisiana's Public Works Act, R.S. 38:2241 et seq
 
 
 [2]
 The Agency handled the underwriting of Delta's bonds from USF&G on both Job-2 and Job-3. The Agency also placed insurance coverage applicable to those two projects, as well as all such insurance needs on Delta's other work, maintaining a credit account for the premiums due. In due course, the Agency paid Delta's note to the Bank and received in return all of the Bank's rights
 
 
 [3]
 Louisiana Public Works Act, R.S. 38:2243
 
 
 [4]
 Whether Baker would otherwise control is a question we need not presently consider