FEDERAL INSURANCE CO.,
Plaintiff–Appellee,

v.

COMMUNITY STATE BANK,
Defendant–Appellant.

In the Matter of RAGUSA
BROTHERS, INC.

PARISH OF TANGIPAHOA, Plaintiff,

v.

RAGUSA BROTHERS, INC., et
al., Defendants.

FEDERAL INSURANCE CO.,
Defendant–Appellee,

v.

COMMUNITY STATE BANK,
Defendant–Appellant.

No. 89–3420.

United States Court of Appeals,
Fifth Circuit.

July 12, 1990.

Frank A. Tessier, Edward J. Pointer, Stephen C. Carleton, New Orleans, La., for Community State Bank.

Matt J. Farley, Deutsch, Kerrigan & Stiles, New Orleans, La., for Federal Ins. Co.

Before WISDOM, POLITZ, and JOHNSON, Circuit Judges.

POLITZ, Circuit Judge:

After Ragusa Brothers, Inc. (Ragusa) defaulted on its contract to construct a jail for Tangipahoa Parish, Louisiana, both Federal Insurance Company (Federal), the surety that completed performance on the project, and Community State Bank (Community), a local bank that loaned Ragusa funds, claimed entitlement to the contract retainage. The district court ruled in favor of Federal. Community appeals. We affirm.

### Background

In April 1985 Ragusa contracted with the Tangipahoa Parish Police Jury (now Parish Council) to build a parish jail for $5,430,-800. In connection with this construction contract Ragusa purchased a performance and payment bond from Federal as required by the Louisiana Public Works Act, La.R.S. 38:2241, *et seq.* Ragusa proceeded with the project and in January 1987 the Parish Council recorded a certificate of substantial completion, but withheld some $332,000 of the contract price as retainage. No subcontractor or materialman filed a notice of lien during the 45–day lien period following the parish's acceptance, and the parish clerk issued a "clear lien" certificate.

For several years before the transactions at issue, Ragusa had maintained a banking relationship with Community. Ragusa's president was a shareholder in the bank. At the close of the 45–day lien period Community loaned Ragusa $200,000 secured by an assignment of Ragusa's rights to the retainage. In its decision to advance the loan Community asserts that it relied upon the fact that no liens had been filed, that the parish had filed its acceptance of the project, and that the parish had acknowledged the assignment which warranted that Ragusa was not in default on its contract obligations. At the same time, however, the loan brought Ragusa's indebtedness to the bank to $900,000. Community also was aware that Ragusa then had a six-figure overdraft in its checking account.

The day after the loan was consummated the project architect sent the parish Ragusa's request for payment of $329,387.43, together with the clear lien certificate. The architect recommended payment of $271,540 and the withholding of $61,000 to cover "punchlist" work that remained. Because of a delay in funding from the State of Louisiana the parish did not receive the funds until April 1987. In the meantime, Ragusa's subcontractors began to complain to the parish and to Federal that they had not been paid. Federal's investigation disclosed unpaid subcontractors' claims exceeding $250,000.

The parish declared Ragusa in default and demanded that Federal take over and complete the contract. To get the subcontractors to return to work to complete the punchlist, and to satisfy their demands against it, Federal paid the subcontractors $297,000 for past unpaid work plus an additional $94,453 for punchlist items. Federal received the $61,000 reserved by the parish for the punchlist work.

Ragusa filed for bankruptcy. Community sued the parish for the retainage funds. Federal sought a declaratory judgment in federal court to determine its rights and those of the bank in the retainage. The parish convoked a concursus proceeding in state court which was removed to bankruptcy court and then transferred to district court. The federal actions were consolidated and the funds were deposited into the registry of the district court.

The court *a quo* held that Federal had incurred liability on the bond under the Louisiana Public Works Act, La.R.S. 38:2181, and had fulfilled its duty as surety by paying the subcontractors, thereby becoming entitled to the retainage by virtue of subrogation. In denying Community's new trial motion the court held that the subcontractors were not required to give the 45–day notice to have a cause of action against Federal, and that the bank, as Ragusa's assignee, was not entitled to the retainage in light of Ragusa's default. Community timely appealed.

## Analysis

This appeal presents a dispute, not new to this circuit, between a competing surety and an assignee bank for the retainage from a construction contract. In *United States Fidelity & Guaranty Co. v. Housing Authority of Berwick*, 557 F.2d 482 (5th Cir.1977), a case presenting similar facts that also required the interpretation of Louisiana jurisprudence, we held that:

> USF & G as surety for Delta [the contractor] was subrogated to the rights of laborers, materialmen, and suppliers of Delta whose claims USF & G paid, and ... the rights of those original Delta creditors are superior to those of the Agency [the assignee of the contractor's proceeds]. *Pearlman v. Reliance Insurance Co.*, 1962, 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190; *Claiborne Parish School Board v. Fidelity & Deposit Co. of Maryland*, 5 Cir.1930, 40 F.2d 577; *Bankhead v. Maryland Casualty Co.*, 197 F.Supp. 879 (E.D.La.1961); 17 Am. Jur.2d "Contractor's Bond" §§ 107–8 (1964). It is also true, however, that USF & G is subrogated to the priority statutory position of the public owner with respect to the contract fund. *Prairie State Bank v. United States*, 1896, 164 U.S. 227, 17 S.Ct. 142, 41 L.Ed. 412; *Henningsen v. U.S. Fidelity and Guaranty Co.*, 1908, 208 U.S. 404, 28 S.Ct. 389, 52 L.Ed. 547; *cf. Bankhead v. Maryland Casualty Co.*, 197 F.Supp. 879 (E.D.La.1961).

*Berwick*, 557 F.2d at 484. This passage and the principles it espouses have since been cited with approval by a Louisiana intermediate appellate court. *See Lambert v. Maryland Casualty Co.*, 403 So.2d 739 (La.App.1981), *aff'd*, 418 So.2d 553 (La. 1982). Community contends, however, that regardless of the route to subrogation Federal chooses it cannot reach the retainage.

Community first contends that Federal cannot reach the retainage through the shoes of the subcontractors because the subcontractors failed to record liens within 45 days of the project's acceptance by the parish. Louisiana's Public Works Act provides that any claimant, such as a subcon-

tractor, on a public works project *"may after the maturity of his claim and within forty-five days after the recordation of acceptance of the work by the governing authority"* record a lien against the project in the parish where the work is done. La. R.S. 38:2242(B) (emphasis added). In 1985, after the Louisiana Supreme Court held that such filings were not mandatory to maintain an action on a public works surety bond, *Honeywell, Inc. v. Jimmie B. Guinn, Inc.*, 462 So.2d 145 (La.1985), the Louisiana Legislature amended a related provision, La.R.S. 38:2247 to read that:

> Nothing in this Part shall be construed to deprive any claimant, as defined in this Part and who has complied with the notice and recordation requirements of R.S. 38:2242(B), of his right of action on the bond furnished pursuant to this Part....[1]

■ Community contends that under this amendment, in order to preserve a right of action on the surety's bond a claimant must record his lien within the allowed 45 days. *See Interstate School Supply Co. v. Guitreau's Constr. & Consulting Co.*, 542 So.2d 138 (La.App.1989); *but see Aurora Pump Unit, etc. v. P & C Constr.*, No. 87–748 (La.App. 3d Cir.).[2] Because Ragusa's subcontractors failed to make such a filing within 45 days, Community contends that Federal paid their claims as a volunteer which, under Civil Code article 1829, defeats any right of legal subrogation to their rights in the retainage.[3] Furthermore, Community continues, even if Federal was not acting as a mere vol-unteer, La.R.S. 38:2247 mandates that those subcontractors had no rights to which Federal could be subrogated. We cannot agree.

By attempting to label Federal's actions as those of a mere volunteer, Community would have this court ignore the realities of a surety's obligations on a performance bond. When the Parish made demand on Federal to complete the job left unfinished by Ragusa, Federal had to do so. Federal did that which the situation prudently required. It acquitted its surety obligations to the parish.[4]

Nor can we agree that because no subcontractors filed claims within 45 days they had no rights to which Federal could be subrogated. Even if La.R.S. 38:2247 is interpreted to require the filing of a lien within 45 days in order to maintain a right of action on the bond, such is not required to maintain a right of action against Ragusa as the contractor or, for that matter, against the contract retainage. *See Goldberg v. Banta Bros.*, 183 La. 10, 162 So. 786 (1935) (decided under the statutory precursor to the Public Works Act). The legislative amendments since *Berwick* do not mandate a different result.

■ Community next contends that Federal cannot access the retainage by subrogation to the rights of the parish because the parish would be estopped from asserting any rights in the retainage as a result of its acknowledgment of the warranties in Ragusa's assignment.[5] In essence, Com-

---

1. This provision previously had read:
   Nothing in this Part shall be construed to deprive any person or claimant within the terms of this Part of his right of action on the contractor's bond which shall accrue at any time after maturity of his claim....

2. Community contends that the district court erred in holding that the subcontractors were not required to file notice of their liens within 45 days in order to retain a right of action because its decision was based solely on *Aurora Pump*, an unpublished state appellate order, rather than *Interstate School Supply*, a contradictory, published state appellate decision of which the court was unaware. Our conclusions, *infra*, are not affected by *Interstate School Supply;* accordingly, that the district court did not refer to it is of no moment.

3. Article 1829(3) of the Louisiana Civil Code provides that subrogation will occur by operation of law "[i]n favor of an obligor who pays a debt he owes with others or for others and who has recourse against those others as a result of the payment."

4. The volunteer doctrine defeats only subrogation by operation of law. It does not limit conventional subrogation. La.Civil Code art. 1827. Federal obtained a conventional subrogation agreement from each subcontractor it paid.

5. Ragusa warranted that it was in compliance with the terms of its contract with the parish. The parish acknowledged Ragusa's assignment to Community and agreed to each warranty therein.

munity asserts that it had no reason to suspect that Ragusa would be a bad credit risk. Community's long relationship with Ragusa, including its knowledge at the time of the loan that Ragusa's checking account was overdrawn by six figures, makes this assertion suspect.

■ Finally, we note that the district court's decision is supported by the fact that Community's rights, if any, in the retainage arose solely by virtue of its assignment from Ragusa. It is well established that an "assignor can assign no better rights than he has, and the assignee, of course, acquires no better rights than the assignor has." *Berwick*, 557 F.2d at 485 (quoting *P.P. Williams & Co. v. Roach*, 12 La.App. 305, 125 So. 465, 468 (1929)). Ragusa's failure to pay its subcontractors and complete the punchlist constituted a material breach of contract occasioning a forfeiture of all rights to the contract retainage held by the parish. Article 9.9.2 of the contract expressly conditioned Ragusa's right to final payment upon its payment of all outstanding claims. That the project architect had recommended release of the retainage to Ragusa does not alter this conclusion. The architect was entitled, on the basis of "subsequently discovered evidence," to "nullify the whole or part of any Certificate for payment previously issued" due to "failure of the Contractor to make payments properly to Subcontractors" or "reasonable evidence that the Work will not be completed [on time]." Construction Contract Article 9.6.1. When Ragusa lost its right to the retainage Community lost the security on its loan.

For these reasons, the judgment of the district court is AFFIRMED.